IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

JAMES EARL LLOYD,            )
                             )
      Plaintiff,             )
                             )    CIVIL ACTION NO.
      v.                     )       2:05cv07-T
                             )         (WO)
HI-RIDGE TRANSPORT,          )
                             )
      Defendant.             )


ORDER

Plaintiff James Earl Lloyd, an African-American man, brings this lawsuit against defendant Hi-Ridge Transport under the Civil Rights Act of 1866 (42 U.S.C.A. § 1981) and the Fair Labor Standards Act of 1938 (FLSA) (29 U.S.C.A. §§ 201-219).[1]  Lloyd alleges that he was terminated because of his race and that he was not paid overtime in violation of the FLSA.  Jurisdiction over both claims is proper under 28 U.S.C.A. § 1331 (federal question); Lloyd's § 1981 claim is also proper under 28

_____

1.  Pursuant to an order dated September 15, 2005 (Doc. No. 15), Lloyd's claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. §§ 1981a, 2000e through 2000e-17, have been dismissed.

U.S.C.A. § 1343 (civil rights), and his FLSA claim is also proper under 29 U.S.C.A. § 216(b).

This case is currently before the court on Hi-Ridge's motion for summary judgment.  For the reasons that follow, Hi-Ridge's motion will be denied.


## I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  Under Rule 56, the party seeking summary judgment must first inform the court of the basis for the motion, and the burden then shifts to the non-moving party to demonstrate why summary judgment would not be proper.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986);  see also Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-17 (11th Cir. 1993)

(discussing burden-shifting under Rule 56).  The non-moving party must affirmatively set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials in the pleadings.  Fed. R. Civ. P. 56(e).

The court's role at the summary-judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  In doing so, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).


## II. BACKGROUND

The following facts are construed in Lloyd's favor as the non-moving party: Lloyd began working at Hi-Ridge, a company that hauls petroleum in interstate commerce, as

3

laborer in June 2004.[2]  His duties included cutting the
grass, sweeping the shop, working on trucks, including
changing tires, checking tire air pressure, changing oil,
and changing brake pads.[3] His brake work was always
"checked behind" by a mechanic, but mechanics rarely
checked his work changing tires, checking tire pressure,
and changing oil.[4]  In September 2004, Lloyd was told he
could begin training as a mechanic once he purchased
tools.[5]  Although Lloyd sometimes worked more than 40
hours a week, he was not paid overtime for the hours he
worked in excess of 40 each week.[6]

---

2. Defendant's motion for summary judgment (Doc. No.
9), Ex. A, Affidavit of Dana Elrod ("Elrod affidavit"),
¶¶ 2-3.

3. Plaintiff's evidentiary submission in opposition
to motion for summary judgment (Doc. No. 13), Ex. 1,
Deposition of James Earl Lloyd ("Lloyd deposition"), pp.
31, 37.

4. Id., pp. 68-69, 71-73.

5. Id., pp. 45, 76.

6. Id., p. 68.

4

During the course of his employment, Lloyd was tardy five times, by anywhere from 5 minutes to one hour. Lloyd also missed an entire day of work on several occasions, including November 15, 2004, when he attended the funeral of a cousin. If Lloyd were going to be absent for an entire day, he always called at his regular start time to inform his supervisor.[7] Hi-Ridge's employee manual describes possible disciplinary action for excessive absences or tardiness as follows:

> "V. Attendance Policy
>
> "Regular attendance is necessary for good operations and employee moral [sic]. If you are unable to work for whatever reason, you are to call your supervisor no later than your normal start time.... Absence must be for a valid reason and kept to a minimum. Excessive absence will result in termination of employment. ...
>
> "X. Employee Conduct
>
> "The following are nonexclusive examples of misconduct, which will subject the employee to disciplinary action, including dismissal. ...

---

7.  Id., pp. 47-50.

> 1. Failing to report at the regularly scheduled time unless instructed otherwise by supervisory personnel.
>
> 2. Failing to report an absence prior to normal starting time.  Employees must personally call unless physically unable to do so. ...
>
> 5. Excessive absences or tardiness."[8]

When Lloyd arrived an hour late to work on November 18, 2004, his supervisor terminated him.  The supervisor stated that he was being fired for excessive tardiness; the supervisor never mentioned Lloyd's absences from work during this conversation.[9]  Lloyd's position was filled by a white male.[10]

Shane McCullough, a white employee who worked as a mechanic, regularly reported for work 15 to 30 minutes after 7 a.m., which was the starting time for all company employees.  On at least one occasion, McCullough arrived

---

8. Defendant's motion for summary judgment (Doc. No. 9), Ex. C, Employee Handbook, pp. 5, 11-12.

9. Id., p. 50-51, 63.

10.  Defendant's motion for summary judgment (Doc. No. 9), Ex. F, Answers to Interrogatories, ¶ 4.

an hour late.  McCullough was repeatedly warned by his supervisor, who was also his father, that he needed to start getting to work on time, but he was not terminated.[11]  McCullough is the nephew of the owner of Hi-Ridge.[12]


### III. DISCUSSION

Lloyd claims that Hi-Ridge's decision to terminate him was discriminatory because McCullough, a white employee, was regularly late and was not terminated. Lloyd also claims that he was entitled to overtime for the hours he worked in excess of 40 each week.  The court will consider each claim in turn.


### A. § 1981 Discriminatory Discharge

Section 1981 prohibits employers from engaging in intentional racial discrimination.   <u>General Bldg.</u>

---

11.  <u>Id</u>., pp. 40-44, 62-63.

12.  Elrod affidavit, ¶ 12.

<u>Contractors Ass'n v. Pennsylvania</u>, 458 U.S. 375, 391 (1982).  The test for intentional discrimination suits under § 1981 is the same as the formulation used for disparate-treatment cases under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 1981a, 2000e through 2000e-17.  <u>Patterson v. McLean Credit Union</u>, 491 U.S. 164, 186 (1989); <u>Standard v. A.B.E.L. Servs.</u>, 161 F.3d 1318, 1330 (11th Cir. 1998).

Because Lloyd has not presented direct evidence of discrimination, this case is governed by the familiar burden-shifting analysis of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).  Under the <u>McDonnell Douglas</u> approach, a plaintiff has the initial burden of establishing a prima-facie case of unlawful employment discrimination by a preponderance of the evidence.  <u>Id</u>. at 802; <u>Young v. General Food Corp.</u>, 840 F.2d 825, 828 (11th Cir. 1988).  If the plaintiff establishes a prima-facie case, the burden then shifts to the employer to rebut the presumption by articulating legitimate, non-

discriminatory reasons for its employment action. Chapman v. AI Transport, 229 F.3d 1012, 1024 (11th Cir. 2000). The employer has the burden of production, not of persuasion, and thus does not have to persuade a court that it was actually motivated by the reason advanced. See, e.g., Texas Dep't of Cmty Affairs v. Burdine, 450 U.S. 247, 253-55, 258 (1981); McDonnell Douglas, 411 U.S. at 802.

Once the employer satisfies this burden of production, "the presumption of discrimination is eliminated and 'the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.'" Chapman, 229 F.3d at 1024 (citations omitted). The plaintiff may meet this burden by persuading the court that a discriminatory reason more than likely motivated the defendant or by

demonstrating that the proffered reason for the employment decision is not worthy of belief. <u>Burdine</u>, 450 U.S. at 256; <u>see also</u> <u>Young</u>, 840 F.2d at 828.


### 1. Prima-Facie Case

Lloyd may prove a prima-facie case of discriminatory discharge by showing: (1) he belongs to a protected group, (2) he experienced an adverse-employment action, (3) Hi-Ridge treated similarly situated employees outside his protected group more favorably, and (4) he was qualified for his job. <u>See</u> <u>Holifield v. Reno</u>, 115 F.3d 1555, 1562 (11th Cir. 1997). Lloyd is a member of a protected group and was terminated. No evidence in the record suggests that he was unqualified for his job. In fact, in support of an inference that he had done his job adequately. he was preparing to take on greater responsibilities working as a mechanic. Thus, only the third element, the like-to-like issue, requires substantive analysis.

"To make a comparison of the plaintiff's treatment to that of non-minority employees, the plaintiff must show that he and the employees are similarly situated in all relevant respects." Id. "[T]he quantity and quality of the comparator's misconduct [must] be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999).

Hi-Ridge contends that McCullough is not a valid comparator because he was never absent from work. "In determining whether employees are similarly situated for purposes of establishing a prima-facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." Holifield, 115 F.3d at 1562. Implicit in Holifield is the understanding that courts should compare only the conduct for which the plaintiff was actually disciplined to conduct for which non-minority employees were not disciplined. The

11

Eleventh Circuit Court of Appeals adopted this approach in <u>Jones v. Bessemer Carraway Med. Ctr.</u>, 137 F.3d 1306 (11th Cir. 1998).   There, the court compared the misconduct of non-minority employees with the misconduct that the plaintiff had been informed, <u>at the time of her termination</u>, were the grounds for her termination.   <u>Id</u>. at 1309-13.   Thus, only the conduct which served as a basis for Hi-Ridge's decision to terminate Lloyd is relevant in determining if McCullough is similarly situated.[13]   Lloyd's supervisor did not mention absences

---

        13.   This conclusion is consistent with Eleventh Circuit case law on pretext.   <u>Standard v. A.B.E.L. Servs. Inc.</u>, 161 F.3d 1318, 1332 (11th Cir. 1998) (noting that employees can prove pretext in the discipline context by showing that the reasons offered by the employer at their termination differ from those offered at summary judgment).   It is also inescapable for the practical reason that Lloyd can also prove a prima-facie case of discriminatory discharge by showing: (1) he belongs to a protected group, (2) he experienced an adverse-employment action, (3) Hi-Ridge replaced him with someone outside the protected class, and (4) he was qualified for his job.   <u>See</u> <u>Bogle v. Orange County Bd. of County Comm'rs</u>, 162 F.3d 653, 656-57 (11th Cir. 1998).   Had Lloyd proceeded under this formulation of his prima-facie case, he could have unquestionably challenged Hi-Ridge's explanation that it fired him for his absences as pretextual under <u>Standard</u>.   Given the number of ways that a plaintiff can prove a prima-facie case, the particular (continued...)

when he fired Lloyd; in its answer to Lloyd's complaint,
Hi-Ridge acknowledged that Lloyd was terminated for being
tardy and failed to mention his absences;[14] in fact, Hi-
Ridge mentions Lloyd's absences as a basis for his
termination for the first time in its answer to
plaintiff's requests for admission, dated April 5, 2005.[15]
Drawing all reasonable inferences in Lloyd's favor, this
inconsistency suggests that Lloyd was terminated only for
his tardiness and not his absences.   Accordingly,
McCullough is a valid comparator if he engaged in

---

13.   (...continued)
formulation should not substantively affect the outcome,
particularly when the <u>defendant</u> sets out the particular
formulation of the prima-facie case as the party moving
for summary judgment.

14.   Answer (Doc. No. 4), ¶ 14.

15.   Defendant's motion for summary judgment (Doc.
No. 9), Ex. F, Requests for Admission, ¶ 10.   Apparently,
Hi-Ridge needed six months of reflection and input from
its lawyers before concluding that Lloyd was terminated
for his absences.

misconduct nearly identical to the misconduct that was the basis for Lloyd's termination, excessive tardiness.[16]

The evidence viewed in the light most favorable to Lloyd reveals that McCullough reported late to work on a daily basis, sometimes by as much as an hour, and was not fired.[17] Lloyd was late five times, by anywhere from five minutes to an hour, and was fired. The quality of McCullough's misconduct is nearly identical to Lloyd's, and the quantity may have been greater. See Mannicia, 171 F.3d at 1368. Lloyd has therefore established a prima-facie case of discriminatory discharge because he was terminated while McCullough was not.

_____

16. Although McCullough and Lloyd held different jobs and McCullough was a relative of management while Lloyd was not, the appropriate focus of a prima-facie case in the discipline context is the nature of the misconduct and the discipline imposed. See Pearson v. Macon-Bibb County Hosp. Auth., 952 F.2d 1274, 1280 (11th Cir. 1992).

17. Hi-Ridge suggests McCullough may have had a different work schedule, but that argument is not supported in the record. Moreover, McCullough's supervisor's admonition that he needed to start coming to work on time supports an inference to the contrary.

14

## 2. Pretext

"Under the established rule of law in this Circuit, [after establishing a prima-facie case of discrimination] a plaintiff can survive a motion for summary judgment ... simply by presenting evidence sufficient to demonstrate a genuine issue of material fact as to the truth or falsity of the employer's legitimate, nondiscriminatory reasons." Evans v. McClain of Georgia, Inc., 131 F.3d 957, 964-65 (11th Cir. 1997). "[O]nce the plaintiff introduces evidence sufficient to permit the factfinder to disbelieve the employer's proffered explanations, summary judgment is not appropriate, because 'issues of fact and sufficiency of evidence are properly reserved for the jury.'" Combs v. Plantation Patterns, Meadowcraft, Inc., 106 F.3d 1519, 1530 (11th Cir. 1997) (quoting Hairston v. Gainesville Sun Publishing Co., 9 F.3d 915, 921 (11 Cir. 1993)).

Hi-Ridge attempts to rebut the presumption of discrimination raised by Lloyd's prima-facie case by

15

arguing that it was justified in firing Lloyd because of his absences and tardiness, each of which is a legitimate, non-discriminatory ground for termination. As already noted, a reasonable fact-finder could conclude that Hi-Ridge's recently adopted position that it fired Lloyd because of his absences is not worthy of belief because it is inconsistent with the reason given to Lloyd when he was terminated.  See Standard, 161 F.3d at 1332. A reasonable fact-finder could also conclude that Hi-Ridge's decision to fire Lloyd for his tardiness is pretextual because McCullough, a white employee, was guilty of nearly identical, if not worse, misconduct but was not terminated.

Hi-Ridge makes the argument that, because McCullough's relatives were managers and executives at Hi-Ridge, kinship, as opposed to race, is the more likely explanation for its different treatment of McCullough and Lloyd.  However, Hi-Ridge also argued that McCullough was not late, and is not similarly situated to Lloyd, because

he had a different work schedule.[18]   In light of the obvious inconsistency of these arguments, such a question of intent is more appropriately left for a jury to evaluate, <u>see</u> <u>Combs</u>, 106 F.3d at 1530.

Lloyd has presented sufficient evidence for a reasonable fact-finder to conclude that the non-discriminatory reasons offered by Hi-Ridge to rebut Lloyd's prima-facie case of discriminatory termination are not worthy of belief.   Accordingly, the court will deny Hi-Ridge's motion for summary judgment on Lloyd's discriminatory discharge claim.

### B. FLSA

Congress enacted the FLSA to help eliminate the existence of labor conditions that are detrimental to health, efficiency, and welfare of workers in the United States.  29 U.S.C.A. § 202(a).  Toward that end, the FLSA includes a maximum-hour provision, which requires that employers pay employees at least one and one-half their

---

18.  <u>See</u> <u>supra</u> note 17.

17

regular pay for hours worked in excess of 40 hours a week.  29 U.S.C.A. § 207(a)(1).  However, the FLSA exempts certain workers from its overtime requirements.

One such exemption is the so-called "motor-carrier exemption."  Employers subject to the jurisdiction of the Secretary of Transportation pursuant to 49 U.S.C.A. § 31502, which includes motor carriers involved in the interstate transportation of goods, 49 U.S.C.A. § 13501, are exempt from the FLSA's overtime provisions.   29 U.S.C.A. § 213(b)(1).  Hi-Ridge satisfies this element of the motor-carrier exemption because it transports petroleum in interstate commerce.

Not only must the employer qualify as a motor carrier for the exemption to apply, but the specific employee must also engage in activities that directly affect the safe operation of motor vehicles in interstate transportation.  29 C.F.R. § 782.2(a) (citing United States v. American Trucking Ass'ns., 310 U.S. 534, 553 (1940)).  Only certain classes of workers affect safety:

18

drivers, driver's helpers, loaders, and mechanics.  29 C.F.R. § 782(b)(1) (citing <u>Pyramid Motor Freight Corp. v. Ispass</u>, 330 U.S. 695, 708 (1947)).   In determining whether a specific employee falls within an exempt class, neither the title of the position or name given to the duties is controlling.   29 C.F.R. § 782(b)(2) (citing <u>Pyramid</u>, 330 U.S. at 707).  Instead, the character of the duties involved in the performance of the job are determinative.   29 C.F.R. § 782(b)(2).  As with all exemptions under the FLSA, the employer bears burden of proving that the motor-carrier exemption applies to a particular employee.  <u>Avery v. City of Talledega</u>, 24 F.3d 1337, 1340 (11th Cir. 1994).

Hi-Ridge contends that Lloyd is subject to the exemption because he was a mechanic.   The regulations implementing the FLSA explain that employees are subject to the motor-carrier exemption as mechanics only if they actually perform "inspection, adjustment, repair or maintenance work on the motor vehicles themselves

19

(including trucks, tractors and trailers, and buses) and are, when so engaged, directly responsible for creating or maintaining physical conditions essential to the safety of the vehicles on the highways through the correction or prevention of defects which have a direct causal connection with the safe operation of the unit as a whole."   29 C.F.R. § 782.6(a).[19]   The inspection, repair, adjustment, and maintenance of brakes, wheels, and axles directly affect safety of operation.   Id. Likewise, inspecting tires, checking air pressure in tires, and changing tires directly affect the safety of operation.   Id.   Among the activities that do not directly affect safety are filling radiators, checking batteries, and the "usual work of ... garage employees performing menial nondiscretionary tasks or disassembling

---

19.   The agency interpretation of what constitutes a mechanic is persuasive authority because "[t]he well-reasoned views of the agencies implementing a statute constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance."   Bragdon v. Abbott, 524 U.S. 624, 642 (1998) (internal quotations omitted).

work." 29 C.F.R. § 782.6(c)(1).  The exemption applies even if employees perform some tasks that directly affect safety and other that do not, unless the safety-affecting duties are de minimis.  See 29 C.F.R. § 782.2(b)(3) (noting that "where the continuing duties of an employee's job have no substantial direct effect on such safety of operation or where such safety-affecting activities are so trivial, casual or insignificant as to be de minimis," the motor-carrier exemption will not apply); see also Pyramid, 330 U.S. at 708 (noting that certain duties "may form so trivial, casual or occasional a part of an employee's activities" that the exemption will not apply).

Of the various duties performed by Lloyd, only his work on brakes and tires is directly related to safety of operation and might subject him to the motor-carrier exemption.  Although he was not always supervised by a mechanic when installing brake pads, he had no discretion in this task because his brake work was always reviewed

21

by a mechanic after it was completed.  Lloyd's brake work is therefore "menial" and "non-discretionary," 29 C.F.R. § 782.6(c)(1), and would not make Lloyd a mechanic for the purposes of the FLSA.  In contrast, when Lloyd checked tire pressure and put tires on trucks, his work was rarely, if ever, reviewed.  Such work affects safety because a tire that is not installed properly or a tire that goes flat or blows out could cause an accident. This task qualifies as mechanic's duties under the FLSA because Lloyd exercised discretion and was solely responsible for safely maintaining the trucks' tires, which directly affects highway safety.

Therefore, the motor-carrier exemption will apply to Lloyd unless his safety-affecting tire work was de minimis.  The court cannot make that determination, however, because it is unclear how much time Lloyd spent on these safety-affecting tasks.  See Morris v. McComb, 332 U.S. 422, 430 (1947) ("There is nothing in the record showing the extent to which the respective garagemen and

22

laborers devoted themselves to the several classes of work [that affect safety] and, if this were an action to recover overtime compensation for individual employees, it would be necessary to determine that fact."). The only evidence in the record that sheds light on this question is the following exchange from Lloyd's deposition:

> "Q. So but you put air in tires and gauged the pressure before you sent the trucks out on the road, didn't you?
>
> "A. Well, I probably would even put the tire on the truck first.
>                         . . .
> "Q. And you've checked the pressure in the tires before trucks went on the road before, haven't you?
>
> "A. Yes, I have.
>
> "Q. That was something that you did on a fairly regular basis, wasn't it?
>
> "A. Not too regular."[20]

This answer is far too ambiguous to serve as a basis to decide whether Lloyd's safety-related duties were de

---

20. Lloyd deposition, p. 73.

23

minimis.  Hi-Ridge has therefore not borne its burden to prove that the motor-carrier exemption applies to Lloyd.[21]

In sum, a genuine issue of material fact remains to be resolved: what proportion of his work week did Lloyd spend on activities that would affect the safety of operation of Hi-Ridge's trucks?  Because the court cannot make that finding based on the current record and that finding is critical to the de minimis inquiry under the FLSA's motor-carrier exemption, Hi-Ridge's motion for summary judgment with respect to the FLSA claim will be denied.

_____

21.  The record in this case is significantly sparser than that in Walling v. Palmer, 67 F. Supp. 12, 15 (M.D. Penn. 1946), where the court decided whether certain garage laborers were exempt under the FLSA only after reciting a minute-by-minute breakdown of the tasks they performed throughout the day.  See also McComb, 332 U.S. at 427; Kimball v. Goodyear Tire and Rubber Co. , 504 F.Supp. 544, 546 (E.D. Tex. 1980); and Neely v. Ecolab Inc., 2004 U.S. Dist. LEXIS 28428, at *7 (M.D. Fla. June 23, 2004) (all deciding whether the de minimis rule of the motor-carrier exemption applied to truck drivers only after reviewing substantial data on how many trips were taken by the drivers in interstate versus intrastate commerce).

## IV. CONCLUSION

For the foregoing reasons, it is ORDERED that defendant Hi-Ridge Transport's motion for summary judgment (Doc. No. 9) is denied.

DONE, this the 18th day of October, 2005.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE